622 F.2d 100
 UNITED STATES of America, Plaintiff-Appellee,
v.
Earl J. GOREL, Defendant-Appellant.
 No. 78-5592.
 United States Court of Appeals,
Fifth Circuit.
 Sept. 17, 1979.
Rehearing Denied Jan. 11, 1980.
 
 Newton B. Schwartz, Houston, Tex., for defendant-appellant.
 James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of Texas.
 Before WISDOM, AINSWORTH and RONEY, Circuit Judges.
 RONEY, Circuit Judge:
 
 
 1
 Defendant Earl J. Gorel was convicted by a jury of conspiracy to kidnap, 18 U.S.C.A. § 1201, but was acquitted of conspiracy to use the United States mail to send a ransom note, 18 U.S.C.A. § 876. On appeal, defendant seeks reversal because the district court denied his motions for change of venue, discovery, and a bill of particulars; refused to suppress his prearraignment statements; committed alleged errors in certain evidentiary rulings; allegedly instructed the jury improperly; and denied his motion for judgment of acquittal or in the alternative for a new trial. Finding no reversible error in any of defendant's contentions, we affirm.
 
 
 2
 This conspiracy involved a plan to kidnap for ransom the younger son of the owner of a Houston hockey team. At trial the Government's chief witness, Raymond Puscedu, testified that he and defendant Gorel planned and made arrangements to kidnap Doug Schnitzer who was attending school in Arizona. According to Puscedu's testimony, Gorel instructed Puscedu to recruit others to assist in the kidnapping scheme. Gorel and Puscedu's plan was to kidnap Schnitzer in Arizona, transport him to Houston, and make Schnitzer write the ransom note. Gorel intended to set the ransom at one million dollars.
 
 
 3
 Puscedu recruited two additional conspirators. The first attempt to kidnap failed because they could not locate Doug Schnitzer. Gorel then supplied Schnitzer's exact address. Without informing Puscedu, the recruits reported the kidnap and ransom plan to the FBI and consented to being wired for sound. Conversations with Puscedu regarding the plan to kidnap Schnitzer were tape recorded. When Puscedu and the two recruits approached Schnitzer's apartment in Arizona on their second kidnap attempt, FBI agents arrested the trio. Following the arrest, Puscedu confessed to the conspiracy. In addition to Puscedu and other witnesses, one of the recruited coconspirators testified at trial.
 
 
 4
 Each of defendant's numerous contentions on appeal is addressed herein.
 
 
 5
 The district court did not abuse its discretion when it denied defendant's motion for change of venue due to pretrial publicity. Juror exposure to news accounts concerning the crime with which the defendant is charged does not create an automatic presumption of the defendant's deprivation of due process. Murphy v. Florida, 421 U.S. 794, 799, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975); United States v. Capo, 595 F.2d 1086, 1090 (5th Cir. 1979). See Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 565, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976). Defendant Gorel's evidence fails to show the degree of media-engendered "pervasive community prejudice" which might warrant such a presumption. United States v. Capo, 595 F.2d at 1090-1091. Furthermore defendant has failed to show that actual prejudice infected the opinions of these jurors as a result of pretrial publicity. See Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). Indicative of the absence of juror prejudice is the fact that of defendant's ten peremptory challenges, only six were used to strike potential jurors from the case.
 
 
 6
 The district court's denial of defendant's motion to discover and inspect documents did not contravene requirements of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Examination of the record shows the information sought was neither exculpatory nor related to the statement of any witness.
 
 
 7
 The trial court properly rejected defendant's motion for a bill of particulars. The decision of whether or not to direct the filing of a bill of particulars is committed to the discretion of the district court. United States v. Cantu, 469 F.2d 679, 680 (5th Cir. 1972), cert. denied, 411 U.S. 908, 93 S.Ct. 1536, 36 L.Ed.2d 197 (1973). No showing was made that the matters requested were necessary to inform the defendant of the charge against him with sufficient precision to enable him to prepare his defense or avoid surprise. Neither were they shown to be necessary for pleading his acquittal or conviction in bar of further prosecution for the same offense. The indictment fairly and adequately apprised defendant of the offenses with which he was charged. United States v. Markham, 537 F.2d 187, 191 (5th Cir. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977); United States v. Smith, 523 F.2d 771, 778 (5th Cir. 1975), cert. denied, 429 U.S. 817, 97 S.Ct. 59, 50 L.Ed.2d 76 (1976).
 
 
 8
 Citing Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975), and Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), defendant argues the arrest warrant was defective because it was based solely on an FBI agent's affidavit containing uncorroborated hearsay of coconspirator Puscedu. Hence, he contends all evidence flowing from the "tainted" arrest should have been suppressed. Although a supporting affidavit may be based on hearsay, the affidavit must disclose some of the underlying circumstances on which the informant based his story and some of the underlying circumstances from which the affiant concluded the informant was credible or his information reliable. Aguilar v. Texas, 378 U.S. at 114, 84 S.Ct. 1509. The district court could properly determine that the information in the affidavit was reliable because the informant was a confessed participant in the conspiracy. See United States v. Harris, 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971).
 
 
 9
 Under the facts of this case the sixteen and one-half hour delay in bringing Gorel before a magistrate for arraignment was not unreasonable. Suppression of statements made by Gorel to FBI agents prior to arraignment was properly refused. Gorel was arrested at 5:42 p. m. and arraigned at about 10:30 a. m. the next day. When Gorel was taken before a magistrate on the evening of his arrest, the magistrate disqualified himself from the proceedings because he was related to Gorel's wife. Since no other magistrate was readily available that evening, Gorel was taken to a detention center to await arraignment the next morning. During the drive to the center, nearly an hour away, Gorel admitted to FBI agents that he had procured Schnitzer's address for Puscedu. Before departing for the detention center, Gorel had been given Miranda warnings.
 
 
 10
 As this Court has previously held, delay is "simply a factor which must be considered along with other factors in determining voluntariness, and such delay must be 'unnecessary' before it will render a confession inadmissible." United States v. Corral-Martinez, 592 F.2d 263, 267-268 (5th Cir. 1979). The facts here demonstrate the delay was not unnecessary, and the reasons for the delay were not inconsistent with standards contained in 18 U.S.C.A. § 3501 relating to admissibility of confessions.
 
 
 11
 Arguing that an agent's reference to the possible involvement of defendant's daughter in the conspiracy constituted "thinly veiled threats" which prompted additional admissions by the defendant, the defendant contends a jury instruction on duress was required. Absent clear error, however, this Court will not upset a trial court's determination that a confession was voluntarily given. United States v. Watson, 591 F.2d 1058, 1061 (5th Cir. 1979); United States v. Vasquez, 534 F.2d 1142, 1146 (5th Cir.), cert. denied, 429 U.S. 962, 97 S.Ct. 389, 50 L.Ed.2d 330 (1976). The record reveals no clear error, and the district court's determination that defendant's statements were voluntarily and freely given was not clearly erroneous. United States v. Maxwell, 484 F.2d 1350, 1352-1353 (5th Cir. 1973).
 
 
 12
 Although defendant objected to testimony regarding his statements and proffered instructions on duress, he failed to object to the trial court's instructions to the jury which omitted a charge on duress. No plain error has been demonstrated by the omission. See United States v. Pena, 527 F.2d 1356, 1365 (5th Cir.), cert. denied, 426 U.S. 949, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976).
 
 
 13
 Contrary to defendant's assertions, an indictment charging in separate counts conspiracy to kidnap and conspiracy to use the United States mail to send a ransom note is not duplicitous. There was no requirement that the Government elect one or the other count since each required different elements of proof from the other to sustain a judgment of conviction. Defendant was acquitted of one count, and no prejudice was shown to have resulted from the indictment charging him in two separate counts. The indictment was neither duplicitous or multiplicitous. See United States v. Free, 574 F.2d 1221, 1224 (5th Cir.), cert. denied, 439 U.S. 873, 99 S.Ct. 209, 58 L.Ed.2d 187 (1978); United States v. Hearod, 499 F.2d 1003, 1005 (5th Cir. 1974); United States v. Goodman, 285 F.2d 378, 379-380 (5th Cir. 1960), cert. denied, 366 U.S. 930, 81 S.Ct. 1651, 6 L.Ed.2d 389 (1961).
 
 
 14
 The district court's jury charge on the weight to be given character evidence was not erroneous. Unlike the charge in United States v. Leigh, 513 F.2d 784, 785 (5th Cir. 1975), it did not contain objectionable language, and it correctly instructed the jury to consider reputation evidence in the same manner it considered all other evidence. United States v. Callahan, 588 F.2d 1078, 1084-1086 (5th Cir. 1979).
 
 
 15
 Determinations of admissibility of evidence rest largely within the discretion of the trial court. United States v. Cohen, 544 F.2d 781, 786 (5th Cir.), cert. denied, 431 U.S. 914, 97 S.Ct. 2175, 53 L.Ed.2d 224 (1977); United States v. Linetsky, 533 F.2d 192, 204 (5th Cir. 1976). The district court's admission of evidence concerning Gorel's unsuccessful investment of $41,000 of Puscedu's money was not reversible error. Puscedu testified that Gorel made a gentlemen's agreement to repay the lost money and that Gorel later suggested the kidnapping plan as a possible way to raise the money. The Government introduced this evidence to show motive. Such evidence is "generally admissible as bearing on the existence and purpose of the conspiracy and the significance of later behavior." United States v. Crockett, 514 F.2d 64, 72 (5th Cir. 1975).
 
 
 16
 Defendant charges the tape recordings of conversations involving Puscedu and the coconspirators Puscedu recruited were erroneously admitted into evidence because the tapes were not authenticated and contained numerous deletions and illegible matters. In addition he argues error was committed because Puscedu's conversations were taped without consent and because no proper instructions were given to the jury regarding the tapes.
 
 
 17
 The tapes disclosed, for the most part, kidnapping instructions given by Puscedu to his recruited coconspirators. Because Puscedu and another coconspirator testified at trial, there was independent evidence of the same kidnapping plans and arrangements discussed on the tapes. In this Circuit the trial court has broad discretion in determining whether to permit a recording to be played before the jury. United States v. Biggins, 551 F.2d 64, 66-67 (5th Cir. 1977). If, as in this case, there is independent evidence of the accuracy of the tape recordings admitted at trial, this Court is reluctant to disturb the trial court's decision. Id.
 
 
 18
 The record shows defense counsel was given copies of the complete tapes and corresponding transcripts two weeks in advance of trial. At trial approximately two hours of the twenty hours of recorded conversations were played before the jury. The Federal Rules of Evidence permit admission of summaries of recordings when the original or copies of the originals are made available to the other party. Fed.R.Evid. 1006. See United States v. Clements, 588 F.2d 1030, 1039 (5th Cir.), cert. denied, 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 455 (1979); United States v. Smyth, 556 F.2d 1179, 1184 (5th Cir.), cert. denied, 434 U.S. 862, 98 S.Ct. 190, 54 L.Ed.2d 135 (1977). Copies of transcripts of the tapes were given to the jurors to follow while the tapes were played, without objection by defendant. Defendant also failed to point out specific items in the tapes which were inaccurate. The trial court's decision to permit use of transcripts was not erroneous. See United States v. Onori, 535 F.2d 938, 948-949 (5th Cir. 1976).
 
 
 19
 Extensive testimony was presented by FBI agents who wired the coconspirators with the recording devices. The agents testified to their training and experience in the use of recording devices, the type of equipment used in this case, the procedures used to wire the coconspirators, the chain of custody of the tapes, the transcription of the tapes and other details concerning the preparation of the tapes. The record reveals the tapes were properly authenticated. See United States v. Clements, supra; United States v. Denton, 556 F.2d 811, 815-816 (6th Cir.), cert. denied, 434 U.S. 892, 98 S.Ct. 269, 54 L.Ed.2d 178 (1977).
 
 
 20
 In this case the coconspirators voluntarily consented to the Government's recording of their conversations with Puscedu. Where one party consents to such recordings, there is no violation of the Fourth Amendment. See United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Hudson v. United States, 429 F.2d 1311, 1312 (5th Cir. 1970), cert. denied, 402 U.S. 965, 91 S.Ct. 1632, 29 L.Ed.2d 130 (1971).
 
 
 21
 Finally, defendant raised no objection to the trial court's instructions to the jury. Since no plain error has been demonstrated, his attack on the failure of the trial court to give limiting instructions regarding the tapes must fail. Fed.R.Crim.P. 30, 52(b); United States v. Pena, supra.
 
 
 22
 At oral argument defendant conceded that United States v. James, 590 F.2d 575, 583 (5th Cir. 1979) (en banc), has prospective application only and therefore is not applicable to this case. Defendant also conceded he was not eligible for a probated sentence since the crime for which he was convicted is punishable by life imprisonment. 18 U.S.C.A. § 3651.
 
 
 23
 The district court's denial of defendant's motion for judgment of acquittal or in the alternative for a new trial was not erroneous. In passing on such motions, the reviewing court must view the evidence in the light most favorable to the Government and the jury verdict is entitled to the benefit of all reasonable inferences that might be drawn therefrom. United States v. Soto, 591 F.2d 1091, 1101 (5th Cir.), cert. denied, 442 U.S. 930, 99 S.Ct. 2862, 61 L.Ed.2d 298 (1979); United States v. Downen, 496 F.2d 314, 318 (10th Cir.), cert. denied, 419 U.S. 897, 95 S.Ct. 177, 42 L.Ed.2d 142 (1974). This record demonstrates there was a sufficient quantum and quality of evidence that the jury could have reasonably found defendant guilty of conspiracy to kidnap.
 
 
 24
 AFFIRMED.